IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RANDALL WAYNE OAKLEY, Institutional ID No. 02385425, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:21-CV-169-Z-BQ |
| AMANDA DYER, *et al.*, | § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Plaintiff Randall Wayne Oakley filed this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights in connection with a child custody investigation, criminal charge, and resulting detention originating in Pampa, Texas. ECF No. 3; Am. Compl. 4–7, ECF No. 6.[1] Oakley seeks monetary damages and injunctive relief, and asks the Court to reunite his separated family members. Am. Compl. 5.

Oakley filed his original Complaint on September 1, followed by his operative Amended Complaint on December 28, 2021. ECF Nos. 3, 6. Under *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for further proceedings. ECF Nos. 1, 4. The Court thereafter reviewed Oakley's Amended Complaint, as well as authenticated records provided by the City of Pampa, and ordered Oakley to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976), which he completed and returned. ECF Nos. 12, 18.

---

[1] Page citations to Oakley's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

Having reviewed Oakley's pleadings and applicable law, the undersigned makes the following findings, conclusions, and recommendations to the United States District Judge.

## I. Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotations omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts

hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. Discussion

### A. Oakley's factual allegations and the authenticated records.

Oakley identifies four Defendants: (1) Texas Department of Family and Protective Services (CPS) Investigator Amanda Dyer; (2) CPS Specialist Cassie Coppock; (3) Pampa Police Detective Stephanie Willoughby; and (4) CPS Attorney Todd L. Alvey. Am. Compl. 3–4; *see* ECF No. 3, at 1. On April 15, 2020, Oakley's thirteen-year-old stepdaughter (M.A.) gave birth to a child in Pampa, Texas.[2] Am. Compl. 5. CPS Investigator Amanda Dyer launched an investigation into Oakley's family the next day, which ultimately resulted in CPS taking custody of the minor children.[3] *See id.* Oakley later pleaded guilty to two counts of sexual assault of a minor child. Questionnaire 6, ECF No. 18. Oakley now alleges Defendants violated his constitutional rights throughout the CPS inquiry, police investigation, and subsequent legal proceedings that led to the children's removal from his home and Oakley's current incarceration. Am. Compl. 5–7; *see* Questionnaire 1.

---

[2] In Oakley's pleadings, he refers to his stepdaughter as being fourteen years old. Am. Compl. 5; ECF No. 3, at 2. Authenticated CPS investigation records from April 2020 state that M.A. had "recently turned 13 years old" at the time she gave birth. The Court assumes Oakley's original and Amended Complaints refer to M.A.'s age at the time he signed them—September and December 2021, respectively—rather than her age at the time of the events underlying his claims.

[3] Authenticated records show that there were three minor children in the home, two of whom (M.A. and her sibling) were not Oakley's biological children. Though Oakley refers to M.A. as his stepdaughter, it is not clear from his pleadings or the authenticated records that Oakley was married to M.A.'s mother in April 2020, or that he ever had legal custody of M.A. or her sibling. Public records show, however, that the father of M.A. and her sibling maintained his parental rights until March 2022. As to the third child, Oakley possessed parental rights as the child's biological father.

Oakley's amended pleadings are factually sparse. The following recitation of facts comes from Oakley's Amended Complaint and questionnaire responses, contextualized by authenticated records received from the City of Pampa:

Investigator Dyer opened an inquiry into Oakley's family on April 16, 2020, one day after M.A. gave birth. *See* Am. Compl. 5. In May, Oakley's probation officer informed Investigator Dyer that Oakley had recently failed a drug screening. Questionnaire 7. Investigator Dyer subsequently obtained a court order for each member of Oakley's household to complete a urinalysis and hair follicle drug test. *See id.* Oakley and each of his minor children tested positive for illicit substances. *See id.* Following the family's drug tests, Investigator Dyer obtained a court order for emergency removal of all children from Oakley's home. *See id.* Oakley maintains that Investigator Dyer falsified the family's test results because he "was not doing drugs at the time of the drug test" and his "kids were not doing drugs ever." *Id.* at 8. In support of his claim, Oakley states "the font and size of the letters used to display the 'Results' are bigger than the rest of the letters on the pages." *Id.* (cleaned up). Oakley argues Investigator Dyer's alleged falsified results violated his due process rights because "she took [his] children" and placed them in foster care.[4] *Id.*

"After [Investigator] Dyer finished the investigation stage at the end of May 2020," Oakley states CPS Specialist Cassie Coppock was tasked with ongoing review of his case. *Id.* at 9. Specifically, Oakley asserts that Coppock was the individual responsible for working with Oakley and the children's mother to "see [the] children and eventually get custody returned." *Id.* Oakley

---

[4] Investigator Dyer's report indicates CPS administered the family drug screening on May 18, 2020, received the results on May 26, and gained emergency custody of the children on May 27. On June 1, Oakley and the children's mother attended an abbreviated custody hearing and entered an agreed order consenting to the state's temporary conservatorship of each child. In his questionnaire responses dated May 5, 2022, Oakley states that to his knowledge his parental rights have not been terminated by any court. Questionnaire 9. Public records show, however, that Oakley's parental rights as to his one biological child were terminated in March 2022. He has not appealed the order.

alleges that he "wrote [Specialist] Coppock multiple letters asking for updates on the case and also asking what [he] could do while in jail to remain involved with [his] child" (*id.*), but Coppock "refused to come see [Oakley] in the jail, which will result in [his] parental rights being terminated." Am. Compl. 7. Oakley contends Specialist Coppock's refusal to visit him violated his due process "[r]ight to be represented by a case worker in all stages of [a] CPS case." Questionnaire 9.

The CPS investigation records indicate that when Investigator Dyer interviewed M.A. in April 2020, M.A. did not initially provide the identity of the baby's father and then stated the father was a classmate. The resulting CPS investigation was therefore not based on a sexual abuse outcry, but instead Oakley and M.A.'s mother admitting they were not aware M.A. was pregnant and provided her no prenatal care. *See* Am. Compl. 5 (stating "Amanda Dyer began investigating an allegation of neglectful supervision" after M.A.'s childbirth). Once M.A. was removed from Oakley's home in June, however, she soon told CPS that Oakley fathered her child.[5] The Pampa Police Department subsequently launched a criminal investigation into a charge of continuous sexual abuse of a child.

Oakley contends that in May 2020, he voluntarily submitted to a DNA test that "excluded [him] as [the] father" of M.A.'s child, and "the attorney representing CPS," Defendant Todd Alvey, "verified [the] results." Questionnaire 7, 10. In August, Oakley submitted to a second DNA test pursuant to a search warrant, which indicated Oakley was a "DNA match" for M.A.'s

---

[5] Oakley disputes the statements included in the records indicating M.A. identified Oakley as the father of her child. *See* Questionnaire 10 ("MA never said I was abusing her!"). At this stage in the proceedings, where authenticated records "conflict[] with the *pro se* plaintiff's allegations, the district court must accept the plaintiff's allegations as true, not" information contained in the authenticated records. *Davis v. Lumpkin*, 35 F.4th 958, 964 (5th Cir. 2022). The Court thus accepts as true Oakley's claim that M.A. never identified him as the father of her child. Even so, this alleged report was the trigger for the Pampa Police Department's criminal investigation and Oakley's ultimate plea of guilty to sexual abuse of a child.

child.[6] *Id.* at 7. Oakley alleges in November 2020 he took a third DNA test that again excluded him as the father. *Id.* Oakley contends Detective Willoughby provided false statements in the probable cause affidavit that formed the basis of the second DNA test's search warrant. *Id.* at 10; Am. Compl. 7. Oakley maintains "that M.A. denied any abuse," so Detective Willoughby's affidavit stating M.A. "made an outcry of abuse on April 16, 2020" is "a lie" and a violation of his constitutional rights. Questionnaire 10 (cleaned up).

Running parallel to Oakley's criminal investigation and prosecution was a "CPS case" concerning the placement and welfare of Oakley's children. *See, e.g., id.* According to Oakley, Investigator Dyer emailed CPS Attorney Alvey, who "represented CPS in the CPS case only," the results of Oakley's first DNA test, which Alvey forwarded to counsel for M.A.'s mother; however, Alvey purportedly withheld the results from the district attorney prosecuting Oakley's criminal case, as well as Oakley's family law attorney and criminal defense attorney. *Id.* at 10–11. Oakley further alleges CPS Attorney Alvey "refused to enforce" a November court order for a new DNA test by failing to require CPS Specialist Coppock "to set it up." Am. Compl. 7; Questionnaire 11. Oakley argues Alvey violated his constitutional rights because the initial DNA test results, if provided to his attorneys, "could have given reasonable doubt in both cases," and the November court-ordered "results would have shown that [Oakley] was not the father of M.A.'s child." Questionnaire 11–12 (cleaned up). Instead, Oakley contends he "lost [his] family and was sent to prison for 25 years for something [he] didn't do." *Id.* at 11.

As relief for his claims, Oakley seeks punitive damages and injunctive relief. Am. Compl. 5. Oakley further states that he "just want[s] the real truth to come out" and he "want[s] [his] family back together." *Id.* (cleaned up).

---

[6] Public records show the results of the second DNA test became part of the stipulation of evidence Oakley signed in his criminal plea agreement. *See* Questionnaire 10.

6

**B. Release from custody and dismissal of state criminal charges are not available remedies under 42 U.S.C. § 1983.**

To the extent Oakley seeks release from Texas Department of Criminal Justice (TDCJ) custody and dismissal of his criminal charges, a § 1983 action is not the appropriate means for obtaining such relief. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (distinguishing between habeas corpus and § 1983 suits); *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997) (noting "§ 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures," while "[a] habeas petition . . . is the proper vehicle to seek release from custody"); *Whitfield v. Bd. of Pardons & Paroles*, No. 3:11–CV–2037–N–BH, 2011 WL 5986013, at *2 (N.D. Tex. Sept. 14, 2011) ("A prisoner cannot challenge the fact or duration of confinement in a § 1983 action.") (citing *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998)), *R. & R. adopted by* 2011 WL 5980038 (N.D. Tex. Nov. 30, 2011); *Lewis v. Meier*, No. 3:01–CV–1574–R, 2002 WL 31156668, at *2 (N.D. Tex. Sept. 24, 2002) (finding that plaintiff's request for release from jail was "an inappropriate remedy in an action brought pursuant to 42 U.S.C. § 1983"). For these same reasons, insofar as Oakley's request that the Court reunite his family constitutes a demand for release or reversal of Oakley's state criminal conviction, the undersigned similarly recommends dismissal.

**C. Oakley may not sue for damages against state officials in their official capacity.**

Oakley seeks monetary damages. Am. Compl. 5. A suit against Defendants Dyer, Coppock, and Alvey in their official capacities is simply another way of stating a claim against CPS, and therefore the State of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). It is well established that suits for monetary damages against state officials in their official capacities are barred both by state

7

sovereign immunity and the Eleventh Amendment, and therefore cannot succeed under § 1983. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892–95 (E.D. Tex. 2006) (collecting authorities and holding that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities); *Thomas v. Tex. Dep't of Fam. & Protective Servs.*, 427 F. App'x 309, 312 (5th Cir. 2011) (per curiam) ("To the extent that [a]ppellants preserved any arguments against [CPS] as an entity, the district court correctly dismissed claims against [CPS] pursuant to the Eleventh Amendment."); *Valdez v. Tex. Dep't of Fam. & Protective Servs.*, No. 5:14–1056–RCL, 2015 WL 4395404, at *6 (W.D. Tex. July 15, 2015) ("As a state agency, [CPS] is entitled to Eleventh Amendment immunity from [plaintiff's] claims.").

Thus, any claim for monetary damages against Defendants Dyer, Coppock, and Alvey in their official capacities should be dismissed.[7]

### D. Oakley has not established that Investigator Dyer's removal of the minor children pursuant to a court order violated his due process rights.

Oakley alleges Investigator Dyer violated his due process rights by removing all minor children from his home "using possibly altered drug test results." Questionnaire 8.

The Court notes initially that there is a general "constitutional right to family integrity." *Morris v. Dearborne*, 181 F.3d 657, 671 (5th Cir. 1999) (describing the right as "well established"); *accord Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 434 (5th Cir. 2008) ("The Supreme Court has held that parents have a fundamental liberty interest in the care, custody, and management of their child." (internal quotation marks and alterations omitted) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982))). Nonetheless, this right does not absolutely prohibit a state's removal of a child from the family home based on allegations of

---

[7] An additional basis for dismissal of these claims is that neither a state nor its officials acting in their official capacities are "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

neglect or abuse; rather, the state simply must comply with the parents' constitutional protections. *Gates*, 537 F.3d at 434–35. In compliance with due process, a state seeking to interfere with a parent's fundamental right to child custody must provide the parent notice and an opportunity to be heard in a meaningful time and manner. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). In instances where a child welfare worker goes so far as to remove a child from the family home, parents receive overlapping protection from the Due Process Clause and the Fourth Amendment's prohibition against unreasonable seizures. *Gates*, 537 F.3d at 428, 434–35; *McCullough v. Herron*, 838 F. App'x 837, 843 (5th Cir. 2020) (per curiam). "Due Process that satisfies Fourth Amendment standards is adequate to protect parents' Fourteenth Amendment liberty interest in their child's custody." *McCullough*, 838 F. App'x at 843; *Gates*, 537 F.3d at 435 ("The procedures required for a constitutional search and seizure under the Fourth Amendment are adequate to protect [plaintiffs'] procedural due process rights and liberty interest in directing the upbringing of their children.").

However, not all child removals require notice and an opportunity to be heard *prior to* removal. Relevant to Oakley's claims, Texas law permits CPS to remove a child without prior notice "if the state court finds among other reasons that there is an immediate danger to the physical health or safety of the child or the child has been a victim of neglect or sexual abuse and that continuation in the home would be contrary to the child's welfare," *and* the removal is "supported by an affidavit sworn to by a person with personal knowledge." *McCullough*, 838 F. App'x at 844 (internal quotation marks omitted) (quoting Tex. Fam. Code Ann. §§ 262.101, 102(a)). "[A] Fourth Amendment violation exists for a false affidavit submitted to the court for the purpose of obtaining a child seizure order." *Id.* (citing *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019)).

9

A plaintiff alleging the state unlawfully seized his child based on a false affidavit must establish that when all "plausibly claimed fabrications" are removed from the affidavit and "all plausibly claimed omitted material" is inserted, the affidavit would not support a finding of probable clause. *See id.* (citing *Marks*, 933 F.3d at 487).

Oakley generally challenges CPS's removal of his two stepchildren and one biological child from the family home. Am. Compl. 5; Questionnaire 8. Oakley acknowledges, however, that CPS obtained an emergency order for the state to take temporary custody of the children following a month-long investigation into neglectful supervision and a court-ordered drug test indicating Oakley and the minor children were positive for illicit substances. Questionnaire 7. Oakley concedes that Investigator Dyer only procured a court order for drug screening after Oakley's probation officer informed her that he had recently failed a drug test. *Id.* Nevertheless, Oakley contends Investigator Dyer falsified the family drug screening results because he "was not doing drugs at the time" and his "kids were not doing drugs ever." *Id.* at 8. Oakley's primary basis for his suspicion, however, is that "[t]he font and size of the letters used to display the 'Results' are bigger than the rest of the letters on the pages." *Id.* (cleaned up). Thus, Oakley maintains the drug screening results were "clearly" altered and cannot provide a lawful basis for removal of his children. Am. Compl. 5; Questionnaire 8.

Oakley's vague allegation that his drug screening result's font sizes differ does not constitute a "plausibly claimed fabrication[]" that, once removed from an affidavit, would negate a finding of probable cause. *Marks*, 933 F.3d at 488 ("The allegation that [defendant] 'knew' her statement was false is . . . not well-pled as it is simply a claim."). Oakley has set forth no facts—beyond his subjective, unsupported belief—demonstrating Investigator Dyer falsified his drug test

results; this failure is fatal to his claim.[8] *See id.*; *see also McCullough*, 838 F. App'x at 844 (determining at summary judgment that plaintiff's conflicting drug test results—one negative and one positive—did "not support a finding that [defendant] knowingly or intentionally made a false statement in her affidavit about [plaintiff's] drug test results").

Accordingly, the undersigned recommends the district judge dismiss Oakley's claim against CPS Investigator Dyer.

### E. Oakley's claim against CPS Specialist Coppock fails for lack of a constitutional violation.

Oakley argues that CPS Specialist Coppock violated his due process "[r]ight to be represented by a case worker in all stages of [a] CPS case" by failing to visit him in jail or respond to his letters. Questionnaire 9; Am. Compl. 7. Other than his broad reference to the Due Process Clause, Oakley identifies no legal basis providing such a right. *See* Questionnaire 9. Texas state law requires courts to appoint an attorney ad litem to represent "an indigent parent of the child who responds in opposition to the" appointment of CPS as managing conservator of his children. Tex. Fam. Code Ann. § 107.013(a)(1). The statute, however, provides no such appointment requirement as to CPS case workers. *See id.* Even if Texas state law did require provision of a CPS case worker, Oakley cannot state a cognizable § 1983 claim without alleging "violation of a right secured by the Constitution or laws *of the United States*." *Whitley v. Hanna*, 726 F.3d 631,

---

[8] Critically, neither Oakley's pleadings nor the authenticated records provide a copy of the affidavit containing Investigator Dyer's purportedly falsified drug test results. The records do include Dyer's investigative report, which indicates she "request[ed] an order for an emergency removal of the children" following the family's positive drug tests. As discussed above, Texas law requires an affidavit for a court to order temporary removal of a child. Oakley confirms in his questionnaire responses that CPS received such an emergency order prior to removal. Questionnaire 7. Oakley makes no claim that CPS failed to provide an affidavit to the state court in support of removal—he simply alleges that Investigator Dyer falsified the test results; however, Oakley pleads no specific facts supporting the conclusion that Investigator Dyer—whose report indicates at least two other CPS employees also investigated Oakley's case—actually wrote the affidavit, or that the drug test results were the only basis for removal provided to the court. *See id.* at 7–8. Thus, even assuming Investigator Dyer wrote the required affidavit, without a review of its contents Oakley's conclusory assertion that omitting the positive drug test from the affidavit would leave no basis for removal is simply conjecture.

638 (5th Cir. 2013) (emphasis added); *see* 42 U.S.C. § 1983. Oakley identifies no federal law or constitutional provision establishing a "[r]ight to be represented by a case worker in all stages of [a] CPS case." Questionnaire 9. Accordingly, Oakley's claim against CPS Specialist Coppock should be dismissed.

### F. Oakley's challenge to his criminal conviction does not give rise to a viable § 1983 claim until it has been reversed or otherwise invalidated.

#### *1. Detective Willoughby*

Oakley attempts to attack the validity of his state criminal conviction by arguing that Detective Willoughby "took an affidavit of probable cause with 1 or more false statements to a magistrate judge to" obtain a DNA search warrant. Am. Compl. 7. Oakley confirms that he pleaded guilty to the charge and is currently serving his sentence. Questionnaire 6, 10. Oakley further accedes that the DNA test results obtained pursuant to Detective Willoughby's search warrant became part of the stipulation of evidence accompanying Oakley's guilty plea. *See id.* As alleged, Oakley fails to state a cognizable claim under 42 U.S.C. § 1983.

In *Heck v. Humphrey*, the United States Supreme Court held that a plaintiff seeking to recover damages for harm "caused by actions whose unlawfulness would render a conviction or sentence invalid" must first prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486–87 (1994). Where a favorable judgment in the civil-rights action would "necessarily imply the invalidity of [a prisoner's] conviction or sentence" in his criminal case, the civil claim is barred unless the criminal conviction has been reversed or otherwise declared invalid. *Id.* at 487. In addition to actions for monetary damages, courts have subsequently applied the "*Heck* bar" to prisoners' claims for injunctive and declaratory relief. *Reger v. Walker*, 312 F.

12

App'x 624, 625 (5th Cir. 2009) (per curiam) (noting that whether a plaintiff's claims are "for damages, declaratory judgment, or injunctive relief," they are not cognizable under § 1983 until plaintiff's conviction is overturned or otherwise declared invalid).

Here, a favorable judgment finding that Detective Willoughby unlawfully obtained a DNA test confirming Oakley fathered M.A.'s child would necessarily call into question the validity of Oakley's criminal conviction for sexually abusing M.A. *See* Questionnaire 6, 10. And while Oakley contends he has filed a habeas petition challenging his conviction based on ineffective assistance of counsel, Oakley does not allege any court has overturned or otherwise expunged his conviction. *See id.* at 6. *Heck* therefore bars Oakley's claim against Detective Willoughby. *See, e.g., Connors v. Graves*, 538 F.3d 373, 377 (5th Cir. 2008) (noting that a guilty plea is a conviction and determining that if the plaintiff "were to prevail on his unlawful seizure claim, he would necessarily undermine the validity of these convictions"); *Franklin v. Hull*, No. 4:08–CV–377–Y, 2009 WL 144502, at *1–2 (N.D. Tex. Jan. 21, 2009) (dismissing as *Heck*-barred claim that plaintiff was innocent of criminal charge to which he had pleaded guilty); *Garcia v. Dall. Police Dep't*, No. 3:13–CV–1261–B–BH, 2013 WL 5433510, at *2 (N.D. Tex. July 29, 2013) ("[Plaintiff's] claims for false arrest based on perjury and illegal search and seizure clearly challenge the validity of his state court convictions and are therefore barred under *Heck*."), *R. & R. adopted by* 2013 WL 5434165 (N.D. Tex. Sept. 27, 2013); *Billiot v. Beavers*, No. 12–2946, 2013 WL 1099060, at *3 (E.D. La. Feb. 21, 2013) (finding "claims that the evidence against [plaintiff] was obtained based on a fraudulently procured search warrant and an illegal search and seizure . . . would necessarily imply the invalidity of a conviction based on such evidence"), *R. & R. adopted by* 2013 WL 1098080 (E.D. La. Mar. 15, 2013); *McMillen v. Nunley*, No. 3:02–CV–2367–L, 2003 WL 22227863, at *2 (N.D. Tex. Sept. 25, 2003) ("If plaintiff can prove that defendant made false

statements to secure the search warrant . . . such success would necessarily call into question his conviction."), *R. & R. adopted by* 2003 WL 22469080 (N.D. Tex. Oct. 22, 2003).

   2. *CPS Attorney Alvey*

Oakley's claim that CPS Attorney Alvey "withheld DNA test results from the district attorney" that would have "given reasonable doubt" in Oakley's criminal case is similarly *Heck* barred. *McHenry v. Louisiana*, No. 18-0131, 2018 WL 3372050, at *2 (W.D. La. June 25, 2018) ("[P]revailing on claims of withholding exculpatory evidence . . . would necessarily imply the invalidity of [p]laintiff's conviction."), *R. & R. adopted by* 2018 WL 3370570 (W.D. La. July 10, 2018); *Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994) (per curiam) (concluding a claim of withholding exculpatory evidence is *Heck*-barred because it would "call [the plaintiff's] conviction into question under *Brady*").[9] Oakley's assertion that CPS Attorney Alvey "refused to enforce a court ordered DNA test" (Am. Compl. 7), which "would have shown that [Oakley] was not the father of M.A.'s child," and therefore caused Oakley to be "sent to prison for 25 years," is also *Heck*-barred. Questionnaire 11–12 (cleaned up); *see McMillen*, 2003 WL 22227863, at *2 ("If the [c]ourt were to grant plaintiff damages or his requested declaratory relief for his alleged false arrest and subsequent incarceration under the facts of this case, such a ruling would necessarily implicate the validity of his . . . conviction . . . .").

The undersigned therefore recommends the district judge dismiss Oakley's claim against CPS Attorney Alvey based on his alleged withholding of Oakley's DNA test results.

---

[9] The Court makes no finding as to whether Texas state law requires an "attorney representing CPS in [a] CPS case only" to disclose exculpatory evidence in compliance with *Brady v. Maryland*, 373 U.S. 83 (1963). Questionnaire 10. In any event, Oakley "has not shown that he has a right to the allegedly withheld evidence that is cognizable under 28 U.S.C. § 1983 [sic]." *Heath v. Thomas*, No. 01-10296, 2002 WL 663720, at *1 (5th Cir. Mar. 27, 2002). Thus, to the extent Oakley argues that CPS Attorney Alvey had such an obligation and failed to fulfill it, leading to Oakley's guilty plea, such claim is barred by *Heck* for the reasons discussed above. *Id.*; *see* Questionnaire 10–11.

### III. Recommendation

For these reasons, in accordance with 28 U.S.C. §§ 1915 and 1915A, the undersigned recommends that the United States District Judge **DISMISS without prejudice** Oakley's request for release from custody. The undersigned further recommends the district judge **DISMISS with prejudice** Oakley's claims against CPS Investigator Amanda Dyer and CPS Specialist Cassie Coppock. Finally, the undersigned recommends that Oakley's remaining claims against Detective Stephanie Willoughby and CPS Attorney Todd Alvey be **DISMISSED with prejudice** until the conditions of *Heck* are met.

### IV. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 12, 2022.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE